UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
STEPHEN FLANAGAN as a Trustee of the General
Laborers' Local 66 Pension Fund, STEPHEN FLANAGAN
as a Trustee of the General Building Laborers' Local 66
Welfare Fund, STEPHEN FLANAGAN as Trustee of the
General Building Laborers' Local 66 Annuity Fund,
STEPHEN FLANAGAN as a Trustee of the General
Building Laborers' Local 66 Greater NY Laborers' Employer
Cooperative and Educational Trust Fund, STEPHEN FLANAGAN
as a Trustee of the General Building Laborers' Local 66 Training
Program, STEPHEN FLANAGAN as a Trustee of the General
Building Laborers' Local 66 New York State Health and Safety Fund,
STEPHEN FLANAGAN as Business Manager of General Building
Laborers' Local Union No. 66 of the Laborers' International Union
of North America, AFL-CIO, STEPHEN FLANAGAN as a Trustee
of the General Building Laborers' Local 66 Vacation Fund, and
STEPHEN FLANAGAN as a Trustee of the General Building
Laborers' Local 66 Laborers' Employer Cooperative and Educational
Trust Fund,

**REPORT AND
RECOMMENDATION**
CV 17-3382 (ADS) (ARL)

                                                         Plaintiffs,

    -against-


XANDER ENVIRONMENTAL CORP., SEGUNDO GUSTAVO
GUATO and ROSA DIAZ,

                                           Defendants.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       This matter was referred to the undersigned by District Judge Spatt for a report and recommendation as whether a motion for a default judgment should be granted and, if so, the appropriate damages to be awarded to the plaintiffs. The plaintiffs have submitted the affidavits of William T. LaVelle and Allen Marmor in support of their motion. Despite being served with the plaintiffs' motion for a default judgment, the corporate defendant, Xander Environmental Corp. ("Xander"), has not submitted papers in opposition. Based on the evidence submitted, the undersigned respectfully recommends that the plaintiffs be awarded damages in the amount of $20,588.08 for delinquent contributions, $2,864.53 in interest on those

unpaid contributions, $4,117.61 in liquidated damages, $4,941.14 for the cost of the audit, $1,750.00 for attorneys' fees and $730.00 in costs, for a total award as against Xander of $34,991.36.

## BACKGROUND

The plaintiff, Stephen Flanagan ("Flanagan"), trustee of the General Building Laborers' Local 66 Pension Fund, Welfare Fund, Annuity Fund, Greater NY Laborers' Employer Cooperative and Educational Trust Fund, Training Program, New York State Health and Safety Fund, Union of the Laborers' International Union of North America, AFL-CIO, Vacation Fund and Laborers' Employer Cooperative and Educational Trust Fund (the "Funds"), commenced this action against the defendants by filing a summons and complaint on June 6, 2017, pursuant to Sections 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 (a), €, (f) and (g), and Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185. ECF No. 1. The plaintiffs seek to collect, among other things, delinquent contributions. *Id.* The Funds are employee benefit and multiemployer plans in accordance with ERISA and the trustee is a fiduciary within the meaning of section 3(1), 3(2), 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(37) and 1145. Compl. ¶ 4.

According to the complaint, the defendants were employers within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and signatories to two Trade Agreements in effect for the period July 1, 2011 through June 30, 2014 and July 1, 2014 through June 30, 2018 (the "CBAs"). *Id.* ¶ 6, 7, 9; LaVelle Aff. Ex. D, E. Pursuant to the terms of the CBAs, the defendants were obligated to make periodic contributions to the Funds on behalf of all employees who performed work covered by the CBAs. Compl. ¶ 15. They were also obligated to submit remittance reports, and, upon the plaintiffs' request, to submit their books and

2

records for audit to ensure compliance with the required benefit fund contributions. *Id.* According to an independent audit of the defendant corporation's books and records completed on December 7, 2016, the defendants failed to make contributions to the Funds from July 1, 2013 through June 30, 2016, totaling $28,973.22. *Id.* ¶ 20. According to the spreadsheets generated pursuant to the audit, $20,588.08 remains due and unpaid. Lavelle Aff. Ex. B.

As previously stated, on June 6, 2017, the plaintiffs filed the instant action against the defendants to recover damages for the unpaid contributions. ECF No. 1. The defendants failed to timely answer, but initially no action was taken by the plaintiffs. Accordingly, a notice was issued on December 7, 2017, advising counsel that there had been no activity in this case and requesting that he inform the Court within ten (10) days of the notice as to why an order should not be entered dismissing this action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). ECF No. 6. Thereafter, the plaintiffs requested a certificate of default against the corporate defendant, Xander, and the Clerk of the noted its default on May 14, 2018.[1] After once again being warned that the case would be dismissed for failure to prosecute, on December 21, 2018, the plaintiffs filed the instant motion.

## DISCUSSION

### I. Legal Standard Governing Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see*

---

[1] The plaintiffs did not seek a default judgment against the individual defendants. ECF No. 9.

*also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

## II. Liability and the Trustees' Claim for Damages

As previously stated, the complaint in this action seeks damages for the defendants' violation of ERISA. Pursuant to the terms of the CBA, the defendants were required to make benefit contributions to the Funds for eligible employees. *Id.* ¶ 15. In addition, pursuant to the terms of the CBA, employers whose contributions were delinquent were liable for the amount of the delinquent contributions, interest at the rate prescribed under Section 6621 of Title 26 of the United States Code, in this case, 3% on an annual basis compounded daily, liquidated damages of 20% of the principal amount due or an amount equal to interest, whichever is greater, attorneys' fees, and costs. *See* Marmor Aff. ¶¶ 9-14. According to the spreadsheet annexed to

counsel's affidavit, $20,588.08 is due in unpaid contributions. *See* Marmor Aff. Ex. B. Thus, the undersigned finds that the facts support a finding that the defendant violated the CBAs as well as ERISA, and the undersigned recommends that a default judgment be entered. *See* 29 U.S.C. § 1132. The undersigned further recommends that the plaintiffs be awarded delinquent contributions in the amount of $20,588.08. *See* 29 U.S.C. § 1132(g)(2)(A).

The plaintiffs also claim that pursuant to ERISA Section 1132(g)(2)(B) and (E) and the CBA, they are entitled to interest on the unpaid contributions at a rate of 3% per year. *See* LaVelle Aff. ¶¶ 8-10, Ex. D, E, Art. Six, par. F(B). According to the plaintiffs' papers, the total interest due is $2,864.53. *Id.* ¶ 10. Accordingly, the undersigned also recommends that the plaintiffs be awarded $2,864.53 in interest on unpaid contributions.

In addition, the plaintiffs are entitled to liquidated damages in an amount equal to 20% of the principal amount. ERISA section 502(g)(2)(c), 29 U.S.C. § 1132(g)(2)(c), allows for an award of statutory damages equal to the greater of interest on unpaid contributions or liquidated damages provided for in the plan not to exceed 20 percent of the unpaid contributions. According to the plaintiffs, the CBA provides that if an audit of the employer's books is required, the employer agrees to pay an additional liquidated damage of twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 or the United States Code, whichever is greater." Lavelle Aff., Ex. D, Art. Six, Sect. 6 (i). The plaintiffs acknowledge, however, that if they were to calculate liquidated damages at 12% annually pursuant to the CBA, the amount would exceed 20% of the unpaid contributions. Accordingly, the plaintiffs request, and the undersigned recommends, that they be awarded liquidated damages capped at 20% or $4,117.61.

The plaintiffs also seek, and are entitled to, reimbursement for the cost of the audit.

Article 6, Section 6 (c) provides that "[i]f after an audit of its books and records, the Employer is found to be substantially delinquent, . . . the Employer shall bear the imputed cost of the audit set forth below: total audit deficiency divided by 150 x the number of months audited = the imputed cost of the audit." *See* Lavelle Aff., Ex. D, Art. Six, Sect. 6 (c). 29 U.S.C. § 1132(g)(2)(E) further provides that in any action in which a judgment in favor of the plan is awarded, "the court shall award the plan . . . such other legal or equitable relief as the court deems appropriate." Accordingly, based on the formula provided for audit fees in the CBA, the undersigned recommends that the plaintiffs be further awarded $4.941.00.

Finally, the plaintiffs seek to be awarded reasonable attorneys' fees and costs pursuant to 29 U.S.C. §1132 (g)(2)(D). As a general matter in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)) (and following *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010). The Supreme Court held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue,* 130 S. Ct. at 1672 (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id.* at 1673 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively

reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours).

This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 190. The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 130 S. Ct. at 1673.

The plaintiffs seek $1,750.00 for attorneys' fees and $730.00 in costs, and counsel has submitted an itemization of time spent and the activities performed. *See* Lavelle Aff, Ex. H. The itemization reflects that the plaintiffs' attorney, who has over 20 years of experience, spent a total of 7 hours working on this case and billed at a rate of $250 per hour. *Id.* Here, the court finds the plaintiffs' rate and expended hours to be within the reasonable range. Accordingly, the undersigned recommends that the plaintiffs be awarded attorneys' fees in the amount of $1,750.00

The plaintiffs also seek costs in the amount of $730.00, consisting of a court filing fee and service of process.[2] The court finds these costs to be reasonable and recommends that the plaintiffs be awarded costs amounting $ 730.00.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for plaintiffs shall serve a copy of it on the defendants upon receipt and shall file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
May 22, 2019

/s/
ARLENE R. LINDSAY
United States Magistrate Judge

---

[2] The itemization of costs submitted by counsel indicates that the cost of service of process was $135. The Court believe this to be a typographical error. The plaintiffs have provided a receipt for $330, consistent with the plaintiffs' request for a total cost award of $730.